

655 Third Avenue
Suite 1821
New York, NY 10017
Tel. No. 212.679.5000
Fax No. 212.679.5005

1010 Northern Boulevard
Suite 328
Great Neck, NY 11021
Tel. No. 516.248.5550
Fax No. 516.248.6027

April 19, 2018

<u>Via ECF</u>
The Honorable Cathy Seibel
United States District Judge for the
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    <u>*Callaham v. Settembre Limousine Service, Inc. et al.*;
                  Civil Action No. 17-CV-04896(CS)</u>

Dear Judge Seibel:

      This office serves as counsel to the named-Plaintiff, Lawrence Callaham, and the two opt-in Plaintiffs, Luckson Jean and Santos Cruz (all three, collectively where appropriate, as "Plaintiffs"), in the above-referenced wage-and-hour action brought under, *inter alia*, the Fair Labor Standards Act ("FLSA") against Settembre Limousine Service, Inc., and Anthony Settembre (together as "Defendants," and together with Plaintiffs as "the Parties"). We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of the Plaintiffs' claims brought pursuant to the FLSA as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). A copy of the Parties' settlement agreement, executed by all of the Parties, is attached hereto as **Exhibit A.**[1]

---

[1] Plaintiffs also bring claims in this action for Defendants' alleged violations of numerous provisions of the New York Labor Law ("NYLL"). While those claims are resolved in the Parties' settlement agreement, Plaintiffs confine their analysis herein to the fairness of their settlement with respect to Plaintiffs' FLSA claims only, as there is no requirement to seek approval of a settlement of NYLL claims. *E.g. Simono v. Gemco Realty II, LLC*, No. 16-cv-5385-AJN, Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017).

**I.   PRELIMINARY STATEMENT**

On June 29, 2017, Lawrence Callaham filed a Complaint in this Court against Defendants - - a transportation company and its owner - - on behalf of himself and all those similarly-situated under, *inter alia*, 29 U.S.C. § 216(b), asserting claims that Defendants, *inter alia*, failed to pay him overtime pursuant to the FLSA. *See* Dkt. No. 1. Specifically, Callaham alleged that he worked for Defendants as a driver, and during that time, he routinely worked in excess of forty hours per week, but Defendants failed to pay him at the statutorily-applicable overtime rate of pay for all hours that he worked each week in excess of forty. On August 23, 2017, the Court entered a mediation referral Order, referring the Parties to mediate with the Southern District's mediation panel. *See* Dkt. No. 13. On September 8, 2017, the Parties sought an extension of the time to mediate, based upon the Parties' agreement to stipulate to conditional certification of an FLSA collective action, which the Court granted on September 19, 2017. *See* Dkt. No. 14. On November 6, 2017, the Court so-Ordered the Parties' stipulation for conditional certification with respect to Plaintiff's federal overtime claims, and accordingly, Plaintiff distributed the Court-approved FLSA notice to forty-five putative members. *See* Dkt. No. 19. As a result of this notice distribution, two individuals opted-in to the action, Luckson Jean and Santos Cruz. *See* Dkt. Nos. 20, 21. Following the opt-in period, the Parties participated in mediation with the Southern District's assigned panel member, Raymond Nardo, Esq. pursuant to the Court's mediation referral Order.

Prior to the mediation, the Parties exchanged documents showing Plaintiffs' hours worked, wages paid, and additionally exchanged damage calculations. During the mediation, the Parties used these records to assess any potential liability, and ultimately, with the mediator's assistance, reached a compromise to fully resolve Plaintiffs' claims in this action. Subsequently, the Parties reduced the settlement terms to writing, as provided in the annexed settlement agreement, subject to this Court's approval.

Specifically, based on each Plaintiffs' damages, the parties agreed to settle the matter for an aggregate sum of $25,000.00, with each Plaintiff, after paying counsel, receiving as follows:

| | |
|---|---|
| Lawrence Callaham: | $11,731.42 |
| Santos Cruz: | $4,464.72 |
| Luckson Jean: | $66.66 |

Additionally, Plaintiffs' counsel respectfully submits an application for one-third of the total settlement amount after deduction of litigation expenses, or $8,131.38, as attorneys' fees, and $605.82 as reimbursement for their out-of-pocket litigation expenses.

## II.     THE AGREEMENT IS FAIR AND REASONABLE

Court approval is required to settle and dismiss FLSA claims with prejudice under Federal Rule of Civil Procedure 41. *Cheeks*, 796 F.3d at 206-07.  Courts routinely hold that "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Delgado v. Technical Institute of Am., Inc.*, 2018 WL 637761, at *1 (S.D.N.Y. Jan. 30, 2018) (citation omitted); *see Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. 2015) (approving FLSA settlement where the agreement "reflect[ed] a reasonable compromise over contested issues") (internal quotations omitted).  "Generally, there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Delgado*, 2018 WL 637761, at *1 (citing *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)).  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement, and approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Tiro v. Pub. House Investments, LLC*, 2013 WL 4830949, at *10 (S.D.N.Y. Sept. 10, 2013) (citation and internal quotations omitted).

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  The *Wolinsky* factors consider: (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id.*

   *A.  Range of Possible Recovery*

In this case, Plaintiffs all allege that they worked for Defendants as drivers for the following periods of time, all of which falls with the FLSA's three-year maximum statute of limitations, 29 U.S.C. § 255:

| Plaintiff | Total Claimed Weeks Worked During FLSA Period |
|---|---|
| Callaham | 20 weeks |
| Cruz | 104 weeks |
| Jean | 1 day |

In his Complaint, Plaintiff Callaham alleged that he worked approximately sixty-eight hours per week as a driver for Defendants' limousine service.  For this work, Callaham claims that Defendants paid him at varying rates based upon the assignments given and each assignment's duration, but never paid him at any rate for the hours that Callaham worked over forty each week.

3

Importantly, as revealed through the exchange of documents, Defendants paid Callaham a pre-fixed amount for each trip that he made to the airport, a separate pre-fixed amount for chauffeuring for weddings and senior proms, and hourly rates for every other trip that he performed. Therefore, Callaham's true regular rate was determined using the "weighted average" method defined in 29 U.S.C. § 778.115.[2] After agreeing upon this method, the Parties eventually compromised upon ten overtime hours per week, based upon the records kept. Because Callaham recorded and submitted the hours that he worked each week for each non-pre-fixed trip, there was not much dispute over the range of hours after review of Defendants' records.

Both Plaintiffs Cruz and Luckson worked part-time for Defendants, and *never* worked over forty hours in a week for Defendants. Indeed, Plaintiff Jean only worked one day for Defendants. Plaintiff Cruz, on the other hand, worked approximately two years, and while there were no overtime damages, Plaintiffs argued that Defendants' failure to provide wage notices or statements under New York Labor Law § 195 entitled him to damages. As a result, Plaintiff Cruz's settlement amount is entirely based upon those state-law damages, as he is not entitled to recover under the FLSA. For his part, Jean did not have any possible wage liability whatsoever.

Based on the foregoing, Plaintiffs' maximum provable FLSA recovery compared to their actual recovery, after paying counsel, is illustrated in the tables below as follows:

| Plaintiff | Alleged Hours Worked | Best Provable Hours Worked | Alleged Maximum Plus Liquidated FLSA Recovery | Alleged Best Provable Actual Plus Liquidated Recovery | Settlement Amount Received After Attorneys' Fees and Costs | Percentage of Alleged Maximum Plus Liquidated FLSA Recovery | Percentage of Alleged Best Provable Plus Liquidated FLSA Recovery |
|---|---|---|---|---|---|---|---|
| Callaham | 68 | 50 | $21,827.00 | $7,795.36 | $11,731.42 | 54% | 150.5% |
| Cruz | N/A | N/A | $0.00 | $0.00 | $4,464.72 | N/A | N/A |
| Jean | N/A | N/A | $0.00 | $0.00 | $66.66 | N/A | N/A |

Clearly, due to the calculation of Callaham's damages, in considering both his best day based upon his allegations and his more realistic provable day based upon the records, this agreement is undoubtedly fair and reasonable. Indeed, there is a realistic possibility that all Plaintiffs would have received less if this case had not settled for the amounts that it did. This is

---

[2] Under this regulation, "[w]here an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs." 29 C.F.R. 778.115.

all the more so because "FLSA claims have a two-year statute of limitations, unless the violation was willful, which extends the limitations period to three years." *Garcia v. Bad Horse Pizza, Inc.*, 2017 WL 192955, at *2 (citing 29 U.S.C. § 255(a)).  Additionally, "if the employer shows to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA, the court may, in its sound discretion, award no liquidated damages." *Id*. at *3-4 (finding that plaintiff failed to demonstrate that defendant willfully violated the FLSA, but defendant failed to produce any evidence that it took steps to learn the requirements of the FLSA and comply with them).  Thus, if Callaham were unable to establish willfulness, or the Defendants produced evidence of good faith, Callaham's recovery could be significantly less.  Thus, the result ultimately achieved for each Plaintiff not only represents a substantial recovery in light of each Plaintiff's best possible result, it is also potentially better than each Plaintiff would receive even on their best day at trial.  This factor overwhelmingly favors approval.

### B. *Avoidance of Burdens and Expenses*

Second, settling at this stage obviously allows the parties to avoid substantial costs and delays.  Indeed, were a settlement not reached at this stage, the parties would have engaged in formal written and document discovery and depositions of all parties (totaling at least three Plaintiff-depositions and most likely three Defendant-depositions), and potentially subsequent motion practice at the summary judgment stage, and/or a motion for decertification of the collective.  The parties would then likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal, resulting in a delayed resolution of Plaintiffs' claims at potentially great expense.  At this point in the action, there is minimal out-of-pocket litigation expenses occurred, but post-depositions, the costs would naturally balloon.  This settlement eliminates all of those costs and delays, and clearly favors approval of this settlement.

### C. *Litigation Risks*

Third, of course, all parties face the risk of losing at trial, either in whole or in part.  Here, even if Plaintiffs were to succeed on liability, there are three risks that could serve to either minimize or eliminate Plaintiffs' recovery: (1) failure to prove all or some of their alleged overtime hours worked; (2) failure to prove willful violations of the FLSA; and (3) Defendants reasonably could show that they made a good faith effort to comply with the statute.  In light of these attendant risks, the settlement amounts here heavily weigh in favor of a fair and reasonable result that warrants this Court's approval.

### D. *Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions*

As detailed herein, this settlement was reached only *after* the parties engaged in the exchange of the relevant records, but *before* expending otherwise-inevitable resources on depositions and formal discovery and potential motion practice. Both sides realized that continued litigation would not be in the best interests of any party involved, and as a result of that recognition, the negotiations were aggressively pursued on both sides to come to a fair and reasonable compromise, with assistance from a court-approved mediator. Indeed, the fact that the parties' settlement was reached with the guidance of a member of this District's mediation panel strongly indicates a fair and reasonable settlement. *See Siddiky v. Union Square Hospitality Grp. LLC*, 2017 WL 2198158, at *4 (S.D.N.Y. May 17, 2017) (citing *Romero v. La Revise Assocs. L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014)) (applying presumption of procedural fairness where negotiations took place with experienced mediator). Accordingly, the settlement achieved clearly reflects an arm's-length negotiation absent from fraud or collusion and a reasonable compromise over the contested issues at stake in the matter.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiffs' release is limited to any wage and hour claims that Plaintiffs have or may have against Defendants, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria*, LLC, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015). Likewise, the FLSA agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez*, 2015 WL 1455689, at *5).

Moreover, the Parties' proposed order, submitted with the present motion, requests that the Court retain jurisdiction of this matter for the sole purpose of enforcing the terms of the settlement agreement and entering judgment in accordance therewith should it become necessary. Should the Court decline to endorse that Order and issue its own from scratch, the Parties respectfully request that any such Order include that provision.

### III.  **ATTORNEYS' FEES ARE ALSO REASONABLE**

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Thallapaka v. Sheridan Hotel Assocs. LLC*, 2015 WL 5148867, at *2 (S.D.N.Y. Aug. 17, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). Attorneys' fees in FLSA settlements are examined, when examined, "to ensure that the interest of plaintiffs' counsel in counsel's own compensation

6

[did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca*, 948 F. Supp. 2d at 366 (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, Plaintiffs' counsel's request that the Court approve fees of one-third of the net settlement is "consistent with the trend in this Circuit." *Kochilas v. Nat'l Merchant Servs., Inc.*, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases). Courts in this Circuit routinely approve attorney's fees awards at a rate of one-third of the net settlement. *See Flores*, 104 F. Supp. 3d at 306 (noting that the percentage of recovery method is "the trend in this Circuit."); *see also McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (one-third contingency fees "are commonly accepted in the Second Circuit in FLSA cases") (collecting cases); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) (same); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Here, Plaintiffs' counsel's requested fee of $8,333.33, or one-third of the net settlement, is entirely reasonable and consistent with that law.

Moreover, the reasonableness of these fees is further solidified by applying the lodestar method as a cross check to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Goldberger*, 209 F.3d. at 50. Indeed, "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fee FLSA cases." *Sakiko Fujiwara*, 58 F. Supp. 3d at 439.

In order to conduct the lodestar crosscheck, Plaintiffs' counsel multiplied the attorney and paralegal hours spent on the case by the individuals' reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Here, if Plaintiffs' counsel were seeking fees pursuant to the lodestar, Michael J. Borrelli, the managing partner, would seek $400 per hour, Alexander T. Coleman, the Firm's litigating partner, would seek $350 per hour for his time, Jeffrey R. Maguire, the Firm's senior associate on the matter would seek $295 per hour, the Firm's junior associates would seek $200 per hour, and the Firm would seek $90.00 per hour on behalf of its paralegals/legal assistants. Courts within this Circuit, including this one, regularly approve these rates in FLSA cases. *See Vivaldo v. United Talmudical Academy of Kiryas Joel, Inc.*, 14-cv-2636-GWG, Dkt. No. 128 (Feb. 9, 2018) (approving rates of $400.00 per hour for Michael J. Borrelli,

$350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals); *Davis et al. v. Uptown Communications & Electric, Inc. et al.*, 16-cv-3990-LB, Dkt. No. 105 (E.D.N.Y. Nov. 15, 2017) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals); *Simono v. Gemco Realty II, LLC*, Docket No.: 1:16-cv-05385 (AJN), Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017) (approving as reasonable rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 for the firm's junior associates, and $100.00 per hour for the firm's paralegals); *Amador et al. v. CILS, LTD, et al.*, No. 16-cv-1733 (VB) (S.D.N.Y. Feb. 28, 2017) (approving as reasonable rates of $400 per hour for Mr. Borrelli, $350 for Mr. Coleman, between $200 and $275 for the firm's associates); *Aguilar v. Trolio Landscaping, Inc.*, Docket No.: 16-cv-02230 (CS), D.E. 32 (S.D.N.Y. Feb. 16, 2017) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 per hour for one of the firm's junior attorneys, and $100.00 per hour for the Firm's paralegals); *Santos v. Yellowstone Properties, Inc.*, 2016 WL 2757427, at *5 (S.D.N.Y. May 10, 2016) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, rates ranging from $200.00 to $300.00 for the Firm's associates, and between $75 per hour and $90 per hour for the Firm's paralegals); *Calderon v. Dynamic Corp. Holdings, Inc*., No 14-cv-3093 (ARL) (E.D.N.Y. Apr. 8, 2016) (same); *Rosario v. Valentine Ave. Discount Store. Co*., No. 10-cv-5255 (ERK)(LB) (E.D.N.Y. Mar. 3, 2016) (same); *Castillo v. RV Transport, Inc.*, No. 15-cv-527 (LGS)(JCF) (S.D.N.Y. Dec. 21, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman prior to him becoming a partner, $250.00 per hour for one of the Firm's senior associates, and $100.00 per hour for the Firm's paralegals).

The Firm calculated its lodestar to be $31,570.00. Thus, the Firm's requested fee of $8,131.38 is significantly less than that figure, and therefore the Firm does not require a multiplier.[3]

Lastly, with respect to expenses, the Firm is seeking reimbursement for $605.82 in out-of-pocket expenses, comprised mainly of the filing fee, travel, and postage to be split pro-rata between Plaintiffs Callaham and Santos. Plaintiffs' counsel's expense statement is annexed hereto as **Exhibit B**.

## IV.    <u>CONCLUSION</u>

In light of the foregoing, the Parties respectfully request that the Court approve their FLSA settlement and dismiss this matter with prejudice, while retaining jurisdiction for the sole purpose

---

[3] Plaintiffs' counsel will submit the Firm's contemporaneously-kept billing records upon the Court's request. But given the work that Counsel represented has been completed, and as it appears from the Court's docket, it should be taken as a given that Counsel performed significantly more work on this file than that which they are being compensated under this proposed agreement.

of enforcing the parties' agreement and entering judgment in the event of a breach in accordance with the agreement's terms. There is a proposed order attached hereto as **Exhibit C** for the Court's convenience.

            Respectfully submitted,

            _____
            Jeffrey R. Maguire, Esq.
              *For the Firm*

C:  All Counsel of Record *via* ECF